Albert R. HENSLEY, Appellant, Claimant,
Employee below,

v.

ARTIC ROOFING, INC., Appellee,
Employer below.

Supreme Court of Delaware.

Submitted Oct. 18, 1976.

Decided Dec. 28, 1976.

Julian D. Winslow, of Winslow & Winslow, Wilmington, for appellant.

Howard M. Berg and Jules Komissaroff, of Berg, Komissaroff & Sawyer, Wilmington, for appellee.

Before HERRMANN, Chief Justice, DUFFY and McNEILLY, Justices.

PER CURIAM.

Claimant appeals from an order of the Superior Court affirming a decision of the Industrial Accident Board (Board) which awarded him only temporary total disability and permanent partial disability benefits. Claimant contends that total disability continues after the six-month period approved by the Board. The critical issues concern his right to continuing benefits beyond the six-month period and whether or not he qualifies for permanent total disability benefits under the "displaced worker doctrine." *Ham v. Chrysler Corporation*, Del.Supr., 231 A.2d 258 (1967); *M. A. Hartnett, Inc. v. Coleman*, Del.Supr., 226 A.2d 910 (1967).

The scope of review in this type of appeal is well settled: the Court must determine whether the decision of the Board is supported by substantial evidence. *Hartnett*, supra, at 911, 912; *General Motors Corporation v. Freeman*, Del.Supr., 3 Storey 74, 164 A.2d 686 (1960).

■ To qualify in this case for permanent total disability benefits under the "displaced worker doctrine," the claimant must satisfy two requirements: first, he must show that he is an unskilled worker, unable to perform any task other than general labor; second, he must demonstrate that his inability to perform the duties of a general laborer is causally related to the accident in issue. Once he has shown these, the burden then passes to his employer "to show the availability of regular employment within [his] . . . capabilities." *Ham,* supra, at 262.

■ Without question, claimant satisfies the first requirement and neither the decision of the Board nor the opinion of the Superior Court suggests the contrary. However, as to the second requirement, it appears that both the Board and the Superior Court did not reach this because, as stated in the former's opinion,

"Dr. Strange's testimony was that the claimant would be available for full employment 6 months after the accident."

Our examination of the record indicates that Dr. Strange did not so testify. Indeed, his testimony was to the contrary, as indicated in the footnote.*

While the claimant's current condition may have been complicated by past accidents, with both psychological and physiological consequences, the record clearly indicates that the accident in question was *determinative* of his present disability. And, significantly, there is uncontroverted medical evidence that as a result of such accident and its attendant surgery, claimant will never be able to return to employment as a general laborer. Therefore, his present disability is causally related to the industrial accident in issue and he is entitled to consideration for permanent total disability benefits under the "displaced worker doctrine." *Ham v. Chrysler Corporation,* supra.

\* \* \* \* \* \*

The judgment of the Superior Court is reversed and the case is remanded for further proceedings consistent herewith.

---

\* On cross examination Dr. Strange, an orthopedic specialist, testified as follows:

"BY MR. BERG:
Q. We have to imagine, sir, as best you're able to just what effect the incident of March 2, 1970 played on this man as divorced from his prior illnesses and the total-disability picture. So would it be a fair statement to say that as a result of the herniation that he would have been healed and been able to return to full employment in approximately three months if we divorce ourselves from the '63, '67, '68 and '69 accidents? Is that a fair statement?
A. Well, not full employment. Full employment—
Q. Absent those?
A. Full employment with the restrictions of no heavy lifting, pushing, shoving, that sort of thing.
Q. Are those taken into consideration in the prior insults to the back or not?
A. No. This would be from the surgery alone.
Q. From the surgery alone?
A. Yes.
Q. Okay. All right. Can you tell us, sir, when, from the surgery alone, he might be expected to resume full employment?
A. In what capacity? As a laborer, as heavy work?
Q. Yes, or—
A. Never.
Q. —performing as a result of the surgery alone?
A. No, I would never tell one of my laminectomy patients to go back to laborious work after they have had a laminectomy.
Q. In any event?
A. In any event.
Q. You would tell him to seek other employment?
A. Try and get another way to make a living."