**Mary LEMON, Employee-Appellant,**

v.

**BRANDYWINE DIALYSIS CENTER, Employer-Appellee.**

Superior Court of Delaware,
New Castle County.

Submitted: Dec. 5, 1985.
Decided: March 13, 1986.

Jeffrey S. Welch of Morris, Nichols, Arsht & Tunnell, Wilmington, for employee-appellant.

Timothy A. Casey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for employer-appellee.

GEBELEIN, Judge.

This is an appeal by Mary Lemon (herein "claimant" or "Ms. Lemon") from the decision of the Industrial Accident Board ("Board") of January 19, 1985 in which the Board held that the claimant's petition of August 30, 1984 for determination of permanent injury pursuant to 19 *Del. C.* § 2326(a) was (1) an offer of settlement accepted by the employer's carrier and approved by the Board pursuant to 19 *Del. C.* § 2344 and (2) was final and binding on the parties unless modified as provided in 19 *Del. C.* § 2347 on the ground of an increase in permanency.

Claimant argues that the Board erred in ruling that either the claimant's petition or her letter to the carrier's counsel on September 13, 1984 constituted an "offer" which was accepted by the carrier in a

letter sent to claimant's counsel on September 24, 1984. Further, the claimant asserts that the Board erred in denying the claimant's amendment to her petition for permanency filed on October 17, 1984. The carrier counters that its letter to claimant on September 24, 1984 in response to the claimant's petition of August 30, 1984 and letter of September 13, 1984 constituted an acceptance of an offer of settlement and as such was binding on the parties. Further, the carrier contends that this agreement was approved by the Board in the proper exercise of its express and inherent authority over workmen's compensation matters and the claimant's amendment of October 17, 1984 was, therefore, ineffectual, as an agreement of settlement had already been entered into and approved by the Board and the claimant had no power to withdraw or modify the offer.

The scope of review on an appeal from a decision of the Industrial Accident Board is limited to a determination of whether the Board committed an error of law or made findings of fact unsupported by substantial evidence. *Talmo v. New Castle*, Del.Super., 444 A.2d 298, *aff'd*, 454 A.2d 758 (1982). The Industrial Accident Board has jurisdiction to determine in the first instance all questions arising under the Workmen's Compensation Act. 19 *Del.C.* § 2121(a). Although the Board has only those powers given to it by the General Assembly expressly or by implication, its authority under 19 *Del.C.* § 2347 to review agreements or awards is nevertheless broad. *Poor Richard Inn v. Lister*, Del. Supr., 420 A.2d 178 (1980).

This action arises out of the disagreement between counsel for the claimant and the carrier over whether an offer of settlement was made by the claimant which was accepted by the carrier. The claimant argues that neither her petition nor her correspondence may fairly be construed as being an offer of settlement either as a matter of basic contract law or in accordance with the purposes and administration of the Workmen's Compensation Act. After reviewing the documents in question, the

Court agrees. The carrier presents no legal authority for the proposition that a petition may be treated as an offer by an employer (or its carrier) and mistakenly relies on correspondence from the claimant discussing the terms upon which she intended to seek an award of permanency to assert that an offer of settlement was made by the claimant. The Court will not address the issue of whether, if claimant's representations were construed to be an offer, the claimant would have been free to amend her petition for permanency prior to a hearing before the Board, as it is not necessary for the decision in this case.

On August 30, 1984, the claimant filed a petition for permanency with the Board pursuant to 19 *Del.C.* § 2326(a), in which she sought compensation for a 10% permanent partial disability to her back and a 5% permanency to both of her legs. Named as the respondent was Ms. Lemon's former employer, Brandywine Dialysis Center. The percentages set forth in Ms. Lemon's original petition were based on the initial report received from Peter S. Huang, M.D., dated August 4, 1984. Although Ms. Lemon disagreed with Dr. Huang's "estimates", she purportedly requested her counsel to file a petition for permanency with the Board to avoid any further delay. Claimant was expecting to receive a medical evaluation from her own physician, Charles A. Depfer, D.O., in the immediate future and felt she would then amend her petition to include the findings of the treating doctor.

On September 24, 1984, Brandywine's counsel wrote to claimant's attorney and stated that the insurance carrier was "willing" to accept Dr. Huang's estimates of permanency.

> ... please be advised that my client is willing to accept Dr. Huang's estimates of permanency and compensate Mrs. Lemon for a 5% permanent impairment of each leg and a 10% impairment of the back ...

The carrier further stated in that same letter:

Would you please relay this *offer* to your client and let me know where we stand with regard to the disfigurement and temporary partial aspects of this case. By a copy of this letter, I am asking Mr. Elder to prepare the necessary check, Agreements and Receipts reflecting the compensation for the above permanencies. I look forward to hearing from you in the immediate future. (Emphasis added.)

Thereafter, on October 17, 1984, claimant's counsel wrote to the carrier's counsel and stated as follows:

I am sorry we have not gotten back to you with a formal response to your offer of settlement set forth in your letter of September 24, 1984; however, we have still not received a response from Dr. Huang concerning a number of questions raised by his August 4th report despite having written to him about this matter more than five weeks ago and called his office to follow up on that request.

In all events, I have enclosed herewith a copy of Dr. Depfer's report of October 15, 1984. Please be advised that we will be relying on the percentages set forth in Dr. Depfer's report with respect to Ms. Lemon's permanency claims.

Please let me know if you would like to have Ms. Lemon examined by your client.

An amended petition was filed with the Board on the same day, October 17, 1984, and included the following percentages which, as noted above, were based on the October 15, 1984 report of Dr. Depfer: 25% to the back and 10% to both legs.

On November 15, 1984, a pre-trial hearing was held in connection with Ms. Lemon's petition for permanency. At that hearing, carrier's counsel requested a legal hearing with the Board concerning the claimant's right to amend her petition to reflect the percentages of Dr. Depfer and a hearing was held on January 10, 1985.

On January 18, 1985, the Board issued a three-page letter opinion on the issue of whether Ms. Lemon could amend her petition, and concluded that:

The claimant made an initial demand which we find to be an initial offer of settlement for her case. That demand was 10% to the back and 5% to the legs. The carrier accepted this offer and by doing so entered into an agreement. That agreement is now binding on the parties and the claimant must now show she had an increase in her permanency since that time. In sum, the Board finds that the initial petition was an offer and the carrier's letter was an acceptance of that offer ...

■ It is the opinion of the Court, after a review of the record, that the Board erred in ruling that either the claimant's petition or its correspondence to the carrier's counsel represented an offer of settlement. The carrier has offered no support for its position that it may treat the claimant's petition for permanency as an offer of settlement.* While the Board has broad authority to review agreements and awards under § 2347, to allow an employer/carrier to treat petitions as offers would place injured employees in the position of unnecessarily postponing the filing of their petitions for compensation and could well result in misadministration of the Workmen's Compensation Act.

In addition, the carrier's interpretation of the effect of the filing of a petition for compensation would allow employers/carriers to accept partial settlements of claims on the basis of actions which were neither intended by the claimant nor heretofore treated under the law as offers of settlement. Moreover, treating petitions as offers of settlement would not facilitate the Board's interest in encouraging settlements as it would necessarily make employees/claimants wary of discussing the terms of their claims as well as potentially encouraging the submission of inflated ini-

---

* It would appear that a rule of the Board could be devised to allow offers of agreement to be formalized. See e.g., Superior Court Civil Rule 68.

tial claims. Finally, these results clearly would not be in keeping with the intended benevolent purposes of the Delaware Workmen's Compensation Act nor with the General interest in compromise and settlement as a favored manner of terminating litigation.

■ Similarly, the record fails to support the Board's finding that the claimant made an offer of settlement to the carrier in her correspondence of September 13, 1984. In that letter to the carrier's counsel the claimant stated in pertinent part:

> ... it would seem that all three of Ms. Lemon's claims should be settled without a formal hearing. As soon as you have had an opportunity to consult with your client I would greatly appreciate your contacting me to further discuss this matter.

The Court fails to discern from this letter that the claimant made an offer of settlement. The carrier's response of September 24, 1984 further fails to substantiate that, at that time, the claimant's letter was treated as an offer by the carrier. As noted above, the carrier's letter states:

> ... my client is willing to accept Dr. Huang's estimates ... would you please relay this offer to your client.

If anything, it appears that the carrier was making an offer of settlement to the claimant. That offer clearly was not accepted.

For the reasons stated herein, the decision of the Industrial Accident Board in this case is reversed and this case is remanded for further proceedings consistent herewith.

IT IS SO ORDERED.

